336

James H. Ripley, Appellee, v. Gustav Kaemmerer et al., Appellants.

Opinion filed March 4, 1935.

P. C. Otwell and Louis Klingel, both of Belleville, for appellants.

F. J. Tecklenburg and Russell H. Classen, both of Belleville, for appellee.

Mr. Justice Murphy delivered the opinion of the court.

In September, 1918, appellee herein, by written instrument, leased to certain persons the coal rights in approximately 100 acres of land located near Belleville in St. Clair county. On June 11, 1930, appellants herein, by a chain of assignments, became the owners of the lease and, after making certain improvements, began the operation of a slope mine. All assignments, including the one to appellants, were made with the consent of appellee.

Appellee filed his bill in chancery in the circuit court of St. Clair county to the April term, 1932, alleging that appellants had violated the terms of the lease in the following respects: (1) by working the mine in an unworkmanlike manner causing falls of the roof and subsidence of the surface; (2) by failure to keep an account book at the mine; (3) by failure to provide a scale to weigh the coal; (4) by failure to make monthly statements to appellee; (5) by refusing to pay 10 cents per ton royalty on the coal mined and removed from said mine; (6) by failure to make annual survey as required by statute; (7) by employing a second class mine manager while employing more than 10 men as miners; (8) by selling an interest in said lease without the consent of appellee. The prayer was for an accounting to determine the amount of royalty due and unpaid, that' appellee be allowed damages for subsidence of the surface soil caused by improper mining and that the court declare a forfeiture of the lease.

The defendants answered the bill denying all the material allegations, except as to the charge of failure to pay royalty at the rate of 10 cents per ton and, as to that allegation, they averred the lease provided that when conditions change that then the rate should be four cents per ton instead of 10 cents and "that conditions in the mining industry have changed to such an extent that they should be required to pay only the sum of four cents per ton as provided by the terms of said lease." There is no averment in the answers as to what the conditions were upon which the change was based. General replication was filed and the cause referred to the master in chancery to make findings of fact, report conclusions of law and make recommendations for a decree.

The material parts of the lease upon which the royalty controversy arose are as follows: "To pay to the lessors the sum of ten cents for each and every ton of mine run coal mined and taken out of said mine, except

the necessary coal that is consumed by the lessees in the necessary operation of said mine. . . . It is agreed, however, by the parties hereto that the ten cents to be paid by the lessors for every ton of coal mined and taken from said mine is based on the present conditions and it is stipulated and agreed that when those conditions change that then the rate shall be four cents for every ton of coal mined instead of ten cents per ton mined.''

In support of appellants' contention that the conditions had changed, justifying a reduction of royalty from 10 cents to four cents, they offered evidence as to the sale price of coal and the cost of production at the time of the execution of the lease in 1918 and in 1931 and 1932. There is no evidence tending to prove the date the changes in price and cost of production occurred.

Appellee contended that the ''conditions'' referred to in the lease, the change in which was to justify a reduction in royalty, was in reference to the construction of a railroad switch to the mine, thus enabling the operators to load onto railroad cars instead of wagons and trucks and offered evidence tending to support his theory.

On this branch of the case, the master found that the evidence was so conflicting that it was impossible to determine what the parties meant in the use of the words ''present conditions'' and ''when those conditions change'' and he recommended that the decree be entered denying appellee's prayer for forfeiture for failure to pay royalty and that appellants be held to account to appellee for 10 cents per ton and that, if the same was not paid within 30 days from the date of the decree, the lease be declared forfeited, otherwise, in full force.

Upon the other issues raised by the pleadings, evidence was introduced and the master found that during the period the mine was being operated by appellants,

four falls had occurred which resulted in the subsidence of the surface; that these falls were caused by an attempt on the part of appellants to drive entries through under a certain ravine for the purpose of reaching a field of coal lying beyond; that appellee knew of these attempts and consented and acquiesced in appellants' efforts and that in the attempt to drive said entries, the appellants did it in a workmanlike manner and that appellee was not entitled to damages for subsidence of the surface soil; that appellee caused a notice of forfeiture of lease to be served on appellants, but, that the proof was not sufficient to warrant a forfeiture of the lease.

Exceptions were overruled and a decree entered in accordance with the findings and recommendations of the master and taxed one-half the costs to each of the parties.

Appellants perfected their appeal to this court from that part of the decree finding that the royalty clause in said lease was so ambiguous and uncertain that its meaning could not be determined, that it was null and void, that the provisions of the lease requiring 10 cents per ton royalty was in full force and effect, that the appellants owed plaintiff for royalty $3,009.80, and from the order directing that appellants pay one-half the costs.

Appellee has perfected his cross appeal from that part of the decree finding that the defaults of appellants were not of a sufficient, grave nature to warrant the termination of the lease and for failure of the court to allow damages for the subsidence of the surface and on that part of the decree which directed that one-half of the costs of the suit should be paid by appellee.

The questions presented on appellants' appeal calls for a construction of the royalty clause in the lease. In construing a contract, it is proper for the court to take into consideration the surrounding circumstances

and to place itself as nearly as it can in the same situation as the parties who made the lease, so that it may view the circumstances as they viewed them and so it may judge the meaning of the words and their application to the things described as the parties judged and applied them. But, this does not give either party the right to establish a different contract from that expressed in the written agreement. *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102. It is to be presumed that the parties introduced into the contract every material item and term and in construing it, the court will not add thereto another term about which the agreement is silent. *Decatur Lumber & Mfg. Co. v. Crail,* 350 Ill. 319; *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.,* 334 Ill. 281. It is apparent that at the time of the execution of the contract in 1918, there were many conditions and circumstances surrounding the making of that contract, the change of which might properly be considered in changing the royalty to be paid under such changed conditions. The contract is silent as to which one or ones of those conditions the parties agreed upon. For this court to say it was one or the other of such conditions that then existed is to add a provision to the contract which the parties did not agree upon. A provision in a contract cannot be given effect when the court is left to ascertain the intention of the parties upon such provisions by mere conjecture or guess. *Woods v. Evans,* 113 Ill. 186.

"The motives and intentions of the parties can only be known from the writing to which the contract is reduced, and no assumption which is contrary to the language used therein can be based upon any external consideration. (*Emerich Outfitting Co. v. Siegel, Cooper & Co.,* 237 Ill. 610.) The intention must be determined from the language used in the instrument and not from any surmise that the parties used the lan-

guage to express an intention or meaning they had in mind but failed to express, and if they have overlooked a condition which they would perhaps have provided for if it had occurred to them, the court cannot guess at the provision they would probably have made and by construction read it into the instrument on the presumption that they would naturally have made such provision if they had thought of it." *Green v. Ashland Sixty-third State Bank,* 346 Ill. 174.

In *Davie v. Lumberman's Mining Co.,* 93 Mich. 491, the court had before it for construction a miner's contract containing a provision "as long as we can make it pay." The court held that the wording was vague and that it was impossible to say that the minds of the parties concurred on the meaning of the words used.

Appellants contend that if the conditioning part of the royalty clause is void for ambiguity and uncertainty that the whole clause in reference to royalty is likewise void. The clause in the lease that would, if valid, give the basis for a reduced royalty would only change the terms of the preceding clause as to the amount to be paid and since the condition upon which the changed rate has not been expressed in the contract and therefore void, the other provision would stand in full force the same as if the conditioning clause had never been inserted. *Ditman v. Clybourn,* 4 Ill. App. 542.

Upon the question of appellee's right to recover damages for subsidence of the surface soil, the evidence shows that there was a ravine extending in an easterly and westerly direction across a part of this farm and that back of the ravine was a field of coal. Some one of appellants' predecessors in title drove an entry parallel with the ravine and then undertook to reach the field back of the ravine by driving rooms under the ravine. Four of these rooms had been started at the time appellants began operation of the

mine. As appellants drove these rooms under the ravine, the rock roof of the rooms was found to be checked and full of crevices. At the time appellants started operation, the rooms which had been started by their predecessors were 25 to 30 feet in width and the roof at that point was in good condition. A preponderance of the evidence shows that as appellants approached the ravine and the defective condition of the roof grew worse, they narrowed the rooms from the previous width until at the time of the cave-ins, the rooms were in width varying from 8 to 14 feet. The preponderance of the evidence is that this was proper mining under such conditions.

Appellant Kaemmerer testified that after the first fall in the roof he had a conversation with appellee in which he told him of the condition of the roof, that there had been a fall in one room and that it would be necessary to pull the track out of the other rooms and stop them, that it was very bad, and, that appellee said to him, ''Don't do that. Try it in the next place or two places. Try and get through there. I don't care if a place or two does cave-in.'' He said he wanted to get through to get the coal on the other side of the fall. Three other witnesses, testifying for appellants, corroborated Kaemmerer as to this conversation. It was denied by appellee.

The master found that in the mining operation of said mine by appellants, four falls occurred; that they were the result of an attempt to drive entries through so as to get out the coal lying beyond; that appellee knew of these attempts and agreed and acquiesced to push through the entries and that the evidence fails to establish that the work was not done in a workmanlike manner and in accordance with good mining practice. This finding was confirmed by the circuit court.

Appellants contend that the findings of fact by the master have the same force and effect as the verdict

of a jury but in *Chechik v. Koletsky,* 311 Ill. 433, the rule was stated to be that the master's report and findings while prima facie correct are of an advisory nature only. All the facts are open for the consideration in the first instance of the trial court, and, in case of appeal, by the reviewing court. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in the reviewing court is, Was the decree rendered by the chancellor the proper one under the law and the evidence?

We have examined all the evidence bearing upon the question of the workmanlike manner with which the entries in question were driven and the consent and acquiescence of appellee to appellants' actions in driving such entries, and we find that the preponderance of the evidence supports the findings of the master and the decree of the court.

March 22, 1932, appellee caused a notice of forfeiture of lease in accordance with section 9 of the Landlord and Tenant Act, Cahill's St. ch. 80, ¶ 9, to be served upon appellants and as grounds for such forfeiture averred substantially the same violations alleged in the bill and hereinbefore set forth. There is no provision in the lease giving appellee the right to declare a forfeiture or to re-enter the premises for a violation of any of its terms.

At the beginning of operations in the latter part of November, 1930, and to January 1, 1931, appellants did not keep a book showing the coal mined and taken from the mine but kept a book of the amount of coal sold. Appellee objected and beginning January 1, 1931, appellants kept a book at the mine showing an account of coal mined and taken from the mine and evidence shows that appellee made settlements of his royalty on the basis of that book as long as appellants continued to pay royalty at the rate of 10 cents per ton. By so doing, appellee waived all right to declare a forfeiture for violation of the lease in that particular.

When appellants began operation, the scales to weigh the coal was located on the tipple, but, in 1930, appellants made certain changes and moved the scales into the mine. The preponderance of the evidence is that appellee consented to such change. The monthly statements required by the lease to be made at the close of each month were furnished and as long as appellants paid 10 cents per ton royalty, appellee accepted it without protest, and made settlements on the basis of such monthly statements. The statements were furnished each month after appellants changed the rate of royalty in July, 1931, and a tender of royalty at four cents per ton figured on the tonnage as set forth in the statements was made. Appellee refused to accept the tender but it does not appear that he refused to accept or protest the contents of the monthly statements.

The evidence shows that appellants caused a survey to be made in 1931 and two in 1932 and we deem that to be a substantial ·compliance with the statute and of the lease which required appellants to operate the mine "according to the Illinois State Mining Law." The only evidence that appellants violated the statute by employing a second class mine manager when they had more than 10 men engaged as miners is found in the statement furnished by appellants to appellee under date of November 30, 1931, which is a statement showing the tonnage that each of 11 men mined. This is explained by appellants that Kaemmerer who was the manager was at times also engaged in mining coal and that on other occasions, they employed a man to work at night when the others were not working, and that he mined coal a part of the time. There is no merit in this contention. Appellee concedes that the proof is insufficient to prove that any interest in the lease had been sold without his consent.

The only other ground for forfeiture urged is the failure of appellants to pay 10 cents per ton royalty instead of four cents. They made a tender of what

they deemed to be due and in good faith undertook to comply with the terms of the lease as they construed it. While they were wrong in their construction, it would be inequitable to declare a forfeiture of the lease for failure to make the payment of the full amount of 10 cents per ton.

The court did not err in taxing the costs one-half to each party.

The decree of the lower court is affirmed.

*Decree affirmed.*