2020 IL App (1st) 191642-U
No. 1-19-1642
Order filed November 9, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |
|---|---|
| WILSON PROPERTY MANAGEMENT, | ) Appeal from the<br>) Circuit Court of<br>) Cook County. |
| Plaintiff-Appellee, | ) |
| v. | ) No. 18 M 5234 |
|  | ) |
| AMY GRANT AND ALL UNKNOWN OCCUPANTS OF 9964 ELM CIRCLE OAK LAWN, IL 60453 | ) Honorable<br>) Patrick T. Rogers, |
| Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justice Griffin concurred.
Presiding Justice Walker dissented.

**ORDER**

¶ 1    *Held*: Trial court judgment in landlord's favor for possession and past due rent was not against the manifest weight of the evidence.

¶ 2    After a bench trial in this forcible entry and detainer case, the trial court awarded possession and damages to landlord Wilson Property Management, finding that tenant Amy Grant failed to pay rent for at least two months and improperly reduced the costs of repairs from some rent

payments. Grant contends (i) the trial court's ruling ran against the manifest weight of the evidence because she was not delinquent on rent, (ii) even if she owed rent, she did not need to tender it because Wilson had rejected prior rent payments while the case was pending, (iii) Wilson's five-day notice improperly demanded more rent than was due, (iv) Wilson should have served the five day notice on her attorney, as the parties were already in litigation, (v) the testimony of Wilson's sole member constituted a judicial admission binding on Wilson, and (vi) the lease granted her the right to deduct for repairs.

¶ 3    We affirm. The trial court's ruling was not against the manifest weight of the evidence, as Grant was delinquent on rent, including late fees, and had improperly deducted the cost of repairs. Further, the content and service of the five-day notice satisfied the legal requirements, and Grant waived the judicial admission argument.

¶ 4                                    Background

¶ 5    As a preliminary matter, we note that a court reporter was not present at trial, but the parties filed an agreed bystander's report, which the trial court certified. And the record contains the trial judge's oral ruling. From these documents and the briefs, we piece together the procedural history, which included three eviction complaints and what transpired at trial.

¶ 6                                    The Lease

¶ 7    Grant entered into a five-year lease with North Dakota Investment Corporation (NDI). (Brian Flisk, who owned NDI, lost the property to foreclosure in November 2014 and Wilson purchased it in April 2016, subject to Grant's lease.) The lease had two five-year options to renew. Grant's rent for the first five years of the lease was $1,125 per month. If renewed, the rent would increase $25 per month every year. The lease imposed a $10 late fee if Grant did not pay rent by the 15th of the month, which increased to $25 if she failed to pay by the 20th day.

¶ 8    As to repairs, the lease provided, in part, that the lessee "shall keep the premises and the fixtures therein in a clean and healthy condition, and in good repair, and in accordance with any and all ordinance in such cases made and provided, at Lessee's own expense, and upon the termination of this lease, for any reason, shall yield and return the same back to Lessor in as good condition of cleanliness and repair as at the date of the execution hereof, reasonable wear and tear excepted. Lessee shall make all necessary repairs to the premises whenever damage to the same has occurred or repairs are required due to Lessee's conduct or neglect, and shall replace all broken glass and fixtures."

¶ 9    In July 2017, Grant exercised the option to renew, extending the lease to October 31, 2022.

¶ 10                              Eviction Proceedings

¶ 11    Grant's prior landlord, Brian Flisk, began paying Grant's rent in March 2017, according to the trial court's ruling. (The bystander's report states Flisk started paying rent in August 2018.) For July and August 2017, Grant's rent payments were less than the full rental amount of $1,125, after deducting for unspecified repairs. She paid $948.88 for July 2017 and $850 for August 2017. On July 21, 2017, Wilson, through its agent, Willie Lott, served Grant with a 10-day notice, claiming Grant owed $683.28 for repairs. When Grant did not pay, Wilson filed a forcible entry and detainer complaint. Grant continued making rent payments, which Wilson returned to Grant by certified mail. If Grant did not pick them up, they were returned to Wilson. Wilson dismissed its complaint on December 4, 2017. Later that month, Wilson deposited more than $5,098.88 in rent checks that Grant paid since the lawsuit was filed, reducing the amount owed to $493.12.

¶ 12    On December 19, 2017, Wilson, through Lott, served a five-day notice on Grant, claiming she owed $433.12. Wilson filed a second forcible entry and detainer complaint on January 12, 2018. Wilson again stopped accepting rent payments from Grant sending them back to Wilson by

certified mail. Grant accepted two checks on return, for May 2018 and October 2018 rent, and never sent them back to Wilson. The other checks were returned to Wilson and eventually cashed. Wilson dismissed the second eviction case on July 13, 2018.

¶ 13 On July 5, 2018, while the second eviction case was pending, Wilson, through its agent, Lott, sent Grant another five-day notice, claiming $5,213.12 for past due rent. Grant threw the notice away because the parties were in litigation and she was represented by an attorney and assumed he also received it. When Grant did not pay the claimed past due rent, Wilson filed a third forcible entry and detainer complaint on July 18, 2018, after the prior case had been dismissed. The complaint sought possession as well rent for April to June 2016, and July 2018, and late fees.

¶ 14 Grant filed an affirmative defense of breach of implied warranty of habitability, asserting the heat in the home had not worked for nearly two years, she used space heaters in every room, the roof leaked, the electrical system was inadequate, and the plumbing was faulty. Grant attached a Village of Oak Lawn inspection report showing the property failed inspection in some areas.

¶ 15 A bench trial began on May 10, 2019. Brian Flisk testified that starting in March 2017, he paid Grant's rent through two entities he owned. Flisk acknowledged that Grant was responsible for the costs of repairs but said that for some months he deducted repair costs from the rent payment. Flisk said Grant did not tell him that Wilson had returned rent checks to her or that she had cashed some of them.

¶ 16 Four different rent ledger pages were introduced into evidence. One ledger erroneously calculated the $25 monthly increases in rent from the inception of the lease, rather than from the beginning of the lease renewal period and another ledger failed to include repair costs. Andres Schcolnik, Wilson's sole member, conceded that the five-day notice demanding $5,213.12 in rent was inaccurate and said that rent ledgers are "fluid documents." Schcolnik testified, however, that

a third ledger introduced into evidence was accurate. That ledger showed Grant had a rent balance of $1,628.12, which included one month's rent and the amounts Grant deducted from her rent for repairs. Schcolnik said Grant was responsible for repairs under the lease, and that the problems she complained about were caused by her misuse of the property. He also said that Grant should have contacted him rather than the Village about necessary repairs and said that he paid thousands of dollars in repairs after purchasing the property.

¶ 17 Aja Dixon, Wilson's bookkeeper, testified regarding the discrepancies in the ledgers. She said Wilson's automated software generated inaccurate rent ledgers because of the unusual terms of Grant's lease. She manually prepared a rent ledger showing a balance as of July 3, 2018, of $2,828.12, which included the rent for May and October 2018 that remained unpaid and the deductions Grant made to her rent in July and October 2017 for repairs. Dixon said the lease held Grant responsible for those repairs, and Grant hadn't made any repair requests since 2015.

¶ 18 The bystander's report indicates that other witnesses for Wilson testified that Grant frequently paid her rent late and never paid the late fees, which were included in the five-day notice. They also testified that Grant complained to the Village, but never notified Wilson of needed repairs before making deductions from her rent.

¶ 19 Grant testified that she told Flisk that Wilson had returned the rent checks and he instructed her to send them back to Wilson. She said she could not recall if she returned the checks for May and October 2018. To support her affirmative defense that any rent she owed should be reduced, Grant testified about and presented photographs of problems with the electricity, heating, plumbing, insulation, vents, and windows. Grant testified that the house was always too cold and she complained to the Village after informing Wilson, but her complaints went unanswered. Grant denied that her misuse of the premises caused the problems.

¶ 20    On cross-examination, Grant acknowledged that the heating problems predated Wilson's ownership, that Wilson had replaced the furnace and the roof and repaired windows, and that she had no written evidence that she complained to Wilson about the heat. She also acknowledged that plumbing problems were addressed and other complaints were deemed not to need repair.

¶ 21    In its oral ruling, the trial court stated that throughout the litigation, a separate entity sent rent payments to Wilson on Grant's behalf and that two of those payments were returned by certified mail and never sent back to Wilson. Thus, the court found a $2,828.12 deficiency in rent for two months—May and October 2018, which Wilson properly returned to Grant. Further, Grant's attorney conceded that Grant owed $500 for the amounts she withheld from rent in 2017. The court acknowledged (i) the 5-day notice listed an incorrect amount of rent Grant owed but that Dixon clarified the amount due, and (ii) Wilson sent Grant a five-day notice while another eviction case was pending and Grant failed to present caselaw as to its impropriety.

¶ 22    As to repairs, the court stated that the lease is "quite specific that the lessee is required to maintain and keep the property in condition and that the property will be tendered back in the same condition." Thus, Grant was not entitled to reduce her rent to pay for repairs, as she did in July and October 2017, without first contacting Wilson. The court reviewed Grant's affirmative defense about the condition of the house and found that Wilson had installed a new furnace, that Grant had not made any complaints to Wilson about necessary repairs for at least a year before the suit was filed, that the Village inspected the home and required Wilson to install carbon monoxide and smoke detectors and make other repairs but did not issue municipal code violation citations.

¶ 23    The court entered a written order finding Grant owed $3,312.13 in rent and $388 in court costs for a total of $3,700.13. (According to the oral ruling, the amount is $3,328.12 in rent and

$388 in court costs, for a total of $3,716.13.) The court also ordered Grant to move out by August 21, 2019, but stayed the order pending appeal.

¶ 24                                    Analysis

¶ 25                              Standard of Review

¶ 26    In determining whether the trial court erred in entering an eviction order under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.*), the standard of review is whether the ruling was against the manifest weight of the evidence. *Wendy & William Spatz Charitable Found. v. 2263 N. Lincoln Corp.*, 2013 IL App (1st) 122076, ¶ 27. For a finding to be against the manifest weight of the evidence, it must appear from the record that the opposite conclusion is clearly evident or that the findings of fact are unreasonable, arbitrary, and not based on any of the evidence. *Id.*

¶ 27                              Trial Court Judgment

¶ 28    Grant contends the judgment was against the manifest weight of the evidence because she did not owe any rent when Wilson served the 5-day notice on July 5, 2018. She also contends that Wilson failed to prove the allegations in its complaint, which alleged she was delinquent on rent for March, April, and May of 2016, and July 2018, because those months had been paid.

¶ 29    Grant raises numerous issues in this section of her brief that she raises again later, but she does not dispute the trial court's finding that when Wilson sent the 5-day notice, she was delinquent on rent after deducting money for repairs. She also does not dispute that the May 2018 rent remained unpaid on July 5, 2018, as she had accepted its return. Absent evidence that she was not delinquent in rent, we cannot find the trial court's judgment unreasonable or arbitrary.

¶ 30    Alternatively, Grant asserts that even if she was delinquent in rent, Wilson rejected her rent checks during the litigation, so it would have been "useless" for her to tender the rent owed in

response to the five-day notice and the law does not require doing a useless act. *Brown v. Lober*, 63 Ill. App. 3d 727, 735 (1975). We disagree. Section 9-209 of the Forcible Entry and Detainer Act (735 ILCS 5/9-209 (West 2016)) (Act), provides that to avoid termination of the lease, a tenant must pay the rent due (not the amount listed on the 5-day notice). Had she paid the amount owed, Wilson would have no forcible entry and detainer claim. Instead, Grant accepted the return of the May 2018 rent (as well as the rent for October 2018) and did not send the checks back. She was delinquent for those months. Indeed, she did not accept the return of any other rent checks, and does not explain her contrary actions for those two months.

¶ 31    Grant also argues Wilson failed to prove the allegations that she was delinquent in rent for March 2016 through May 2016 and July 2018. Grant asserts that Wilson never presented evidence regarding 2016 rent, admitted that the July 2018 rent had been paid, and presented evidence regarding different unpaid months. Grant argues that "a party cannot plead one cause of action in its complaint and receive judgment on the basis of a different cause of action." *In re Estate of Bonkowski*, 337 Ill. App. 3d 72, 77 (2003) (quoting *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 652 (1995).

¶ 32    Whether a matter is within the scope of the pleadings is committed to the discretion of the trial court. *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App. 3d 359, 369 (2011). Although Wilson presented evidence showing Grant was delinquent for months different than those alleged in its complaint, its cause of action did not change—it sought possession and damages because Grant was behind in in rent. Moreover, in a bench trial, a court is capable of determining whether an argument is based on evidence. *Sullivan v. Berardi*, 80 Ill. App. 3d 417, 421 (1980). The trial court did not abuse its discretion in allowing Wilson to present evidence

supporting its argument that it was entitled to possession and damages because Grant was delinquent in rent and improperly deducted the costs of repairs. *Id.*

¶ 33                                                    Five-Day Notice

¶ 34    Grant raises two issues regarding Wilson's five-day notice. First, she contends the five-day notice should be deemed invalid because Wilson knew it was demanding more rent than was due. Grant repeatedly asserts Wilson *intentionally* misstated the amount of rent owed in its 5-day notice but she presents no evidence to support that contention. Wilson's sole member, Schcolnik and its bookkeeper, Aja Dixon, acknowledged the 5-day notice as incorrect. Dixon testified that this was due, in part, to an improper understanding of the rent increases and faulty software, so she manually created a ledger that the trial court accepted as accurate.

¶ 35    Moreover, that a 5-day notice demands more than the plaintiff was entitled to receive does not necessarily invalidate the notice. *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263, 272 (1998) (citing *Elizondo v. Medina*, 100 Ill. App. 3d 718, 721 (1981)). In *Elizondo*, the landlord's five-day notice required a tender of $900 when only $800 was due. The court found the defendant's tender of $400 was insufficient, noting "it is well settled that the defendant must pay the entire amount due to escape the effect of a five-day notice." *Elizondo*, 100 Ill. App. 3d at 721. The court also rejected "the defendant's argument that the 5-day notice was invalid because it demanded more money than plaintiff was entitled to receive *** because the "defendant, having tendered only $400, cannot claim prejudice."

¶ 36    Here, Grant tendered no money to Wilson in response to the five-day notice, claiming she was not delinquent on rent. Having made no tender on the grounds that no rent was owed, like the defendant in *Elizondo* who paid less than was owed, she cannot claim she was prejudiced by the incorrect amount in the five-day notice.

¶ 37    The dissent relies on two cases, from New York and California, as persuasive authority for finding an inaccurate statement of rent due invalidates the five-day notice. The first case *Fitzpatrick Housing Development Fund Corp. v. Gonzalez*, 61 Misc. 3d 739, 741, 82 N.Y.S. 3d 856, 858-59 (N.Y. Civ. Ct. 2018), is inapposite, as the named petitioner in the rent demand was a previous owner, not the current owner, and thus lacked the capacity to sue the tenant for unpaid rent and possession.

¶ 38    As to the California case, California's unlawful detainer statute requires as a prerequisite to instituting an action for recovery of possession the service of a three-day notice to pay rent or quit "stating the amount which is due." Cal. Code Civ. Proc., § 1161(2) (West 2018). And, as the dissent notes, several California cases, including *Levitz Furniture Co. v. Wingtip Communications, Inc.*, 86 Cal. App. 4th 1035, 1038, 103 Cal. Rptr. 2d 656, 658 (2001), have held that a landlord may not prevail in an unlawful detainer action unless the amount stated in the notice is the exact amount due. Illinois's statute provides that "[a] landlord or his or her agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated." 735 ILCS 5/9-209 (West 2018). It does not, like the California statute, require the landlord to state the amount due. Because of the different statutory language, the cases applying the California statute are irrelevant.

¶ 39    Grant asks us to modify *Elizondo* to hold that a landlord may not knowingly submit incorrect amounts on a five-day notice. As noted, the evidence does not show that Wilson knowingly submitted an incorrect five-day notice, and we will not address an issue that is not before us. *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 410 (1990) (prohibiting court from answering question that cannot affect result as to parties or controversy before it).

¶ 40    Grant next contends that because the parties were already in litigation and an attorney represented her, Wilson should not have sent a five-day notice to her. For support, Grant relies on Illinois Rule of Professional Conduct 4.2, which states, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ill. S. Ct. R. 4.2 (eff. July 1, 2013).

¶ 41    Rule 4.2 does not apply, as the five-day notice was not a communication from a lawyer. It was sent by Wilson, through its agent, Willie Lott. Moreover, Grant did not raise this argument in the trial court. She argued that Wilson should not have sent a five-day notice while an eviction proceeding was pending, and the trial court found she failed to cite any cases to support the argument. She did not argue, however, that the Wilson should have sent the notice to her counsel. "[I]ssues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Thus, we do not address it.

¶ 42                              Judicial Admissions

¶ 43    Grant contends Schcolnik's testimony and the documentary evidence he relied on, namely a ledger, constitute judicial admissions that the trial court should have used against Wilson. Specifically, she asserts that the trial court had to accept as binding on Wilson, Schcolnik's testimony that Grant owed $1,628 in rent, which included the $1,150 in rent Wilson returned to Grant for the May 2018 rent and $478 for repairs in 2017.

¶ 44    Judicial admissions are formal admissions in the pleadings and open court, stipulations, and admissions on a request to admit that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010). For a statement to constitute a judicial

admission, it must be clear, unequivocal, and uniquely within the party's personal knowledge. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 597 (1995). The rule is inapplicable when the party's testimony is inadvertent, uncertain, or amounts to an estimate rather than a statement of concrete fact. *Brummet v. Farel*, 217 Ill. App. 3d 264, 266 (1991).

¶ 45    We do not have a transcript of Schcolnik's testimony. Nevertheless, the trial court's oral ruling indicates the testimony involved what he believed to be the rent delinquency. He relied on a ledger, which he described as a "fluid document" that can change from day to day. This is not an unequivocal statement, but rather a statement as to what he believed was owed based on an inaccurate ledger. As the trial court noted, Dixon explained why some of the ledgers were wrong and testified about a manually created ledger. The court heard testimony from both witnesses and deemed Dixon's testimony and documents to be accurate.

¶ 46    Moreover, Grant raises Wilson's characterization of Schcolnik's testimony as judicial admissions for the first time on appeal. So the argument has been waived. "The function of a reviewing court is limited to review of issues decided by the trial court and cannot be extended to issues not passed upon at trial." *In re Estate of Devey*, 239 Ill. App. 3d 630, 632-33 (1993); *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 47                                    Deductions for Repairs

¶ 48    Grant contends that under the lease (i) she was entitled to deduct the costs of repairs from her rent, (ii) Wilson was not permitted to charge her for repairs that were not caused by her conduct, and (iii) Wilson improperly included the cost of repairs in the five-day notice.

¶ 49    The interpretation of a lease prsents a question of law to be determined by the reviewing court independent of the trial court's judgment. *Harris Trust & Savings Bank v. LaSalle National Bank*, 208 Ill. App. 3d 447, 453(1990). The rules for construing a lease follow those for construing

a contract. *Design Studio International, Inc. v. Chicago Title & Trust Co*. 185 Ill. App. 3d 797, (1989). Where the language is definite and precise, there is no need for interpretation. *Id*. at 802. Where there is doubt or uncertainty as to the meaning of the language, it should be construed most strongly against the lessor and in favor of the lessee. *Chicago Housing Authority v. Rose*, 203 Ill. App. 3d 208, 216 (1990).

¶ 50    Grant asserts that the deductions she made to her July 2017 and August 2017 rent were warranted under the lease. Specifically, Grant asserts that the lease required her to only make repairs resulting from her own conduct or neglect. She asserts that if Wilson refused to make repairs, she could deduct the cost from her rent unless Wilson can show the repairs were needed due to her neglect or misconduct. Alternatively, she contends that the lease is ambiguous as to repairs, and the trial court should have interpreted it in her favor. We disagree.

¶ 51    The lease states that the lessee "shall keep the premises and the fixtures therein in a clean and healthy condition, and in good repair, and in accordance with any and all ordinance in such cases made and provided, at Lessee's own expense." It does not state that Grant can deduct repairs from her rent. Even if, as she contends, some of the repairs were not her fault, which is not clear form the record, several witnesses testified that she had not informed Wilson of the need for repairs for several years, and perhaps as far back as 2015, as Dixon asserted. If the repairs were due to her conduct, she was responsible for them under the lease. If the repairs were unrelated to her own conduct, the lease did not permit Grant to simply deduct them from her rent without first contacting Wilson. Grant contends Wilson was not permitted to charge her for repairs that were not her fault; yet she presented no evidence showing that occurred.

¶ 52    The dissent asserts we should reverse the trial court because the lease was ambiguous regarding repairs and Grant acted in good faith and merely failed to guess the correct amount of

rent due. First, we disagree with the characterization of the lease as ambiguous. As noted, it did not permit Grant to make deductions for repairs. The Residential Tenants' Right to Repair Act (765 ILCS 742/1 (West 2018)) does permit a tenant to deduct repair costs from rent payments but only if the tenant first "notif[ies] the landlord in writing *** of the tenant's intention to have the repair made at the landlord's expense." 765 ILCS 742/5 (West 2018). And, as the dissent concedes, Grant never notified Wilson before deducting the amounts from her rent.

¶ 53    Second, Grant did not just fail to guess the correct amount of rent due. She made no payments toward the overdue rent after receiving the five-day notice due to her belief that she was not delinquent. Had Grant followed proper procedures for deducting the costs of repairs from her rent and paid the delinquent rent, as the dissent suggests, a good faith argument might have merit. That did not happen, and the trial court's ruling was not against the manifest weight of the evidence.

¶ 54    Lastly, Grant asserts Wilson improperly included the costs of repairs in its five-day notice. This is inaccurate. The five-day notice included the amount Wilson claimed Grant improperly deducted from rent payments for repairs, not the costs of repairs.

¶ 55    We affirm and under Supreme Court rule 366(a)(1) (eff. Feb. 1, 1994), we order that the amount owed be corrected to $3,716.12.

¶ 56    Affirmed as modified.

¶ 57    PRESIDING JUSTICE WALKER dissenting:

¶ 58    I respectfully dissent from the majority decision because the five-day notice does not strictly comply with legal requirements, and Grant's conduct does not justify forfeiture of her home.

¶ 59    An action for eviction, "is a special statutory proceeding, summary in its nature, in derogation of the common law, and a party seeking this remedy must comply with the requirements of the statute."

*Avdich v. Kleinert*, 69 Ill. 2d 1, 6 (1977), quoting *West Side Trust & Savings Bank v. Lopoten*, 358 Ill. 631, 637 (1934). Section 9-209 of the Code of Civil Procedure provides:

> "A landlord or his or her agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, \*\*\* the lease will be terminated. \*\*\*"

¶ 60    Notice made pursuant to this Section shall, as hereinafter stated, not be invalidated by payments of past due rent demanded in the notice, when the payments do not, at the end of the notice period, total the amount demanded in the notice. \*\*\* To prevent invalidation, the notice must prominently state:

> " 'Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.' " 735 ILCS 5/9-209 (West 2018).

¶ 61    Because "the statute includes a requirement that written demand is made prior to filing a complaint, the demand must be made in strict compliance with the statute." *Figueroa v. Deacon*, 404 Ill. App. 3d 48, 52 (2010). The trial court here correctly found that the notice to Grant overstated the amount due by several thousand dollars. "The purpose of the rent demand is not only to inform the tenant that an eviction proceeding will be commenced if payment is not made, but also to allow the tenant an opportunity to make payment as required by the demand. Furthermore, *if the demand is inaccurate*, the tenant is not in a position to remedy the default and make payment." (Emphasis in original). *Fitzpatrick Housing Development Fund Corp. v. Gonzalez*, 61 Misc. 3d 739, 741, 82 N.Y.S. 3d 856, 858-59 (N.Y. Civ. Ct. 2018). Therefore, "[a] notice that seeks rent in excess of the amount due is invalid and will not support an unlawful

detainer action." *Levitz Furniture Co. v. Wingtip Communications, Inc.*, 86 Cal. App. 4th 1035, 1038, 103 Cal. Rptr. 2d 656, 658 (2001).

¶ 62    The majority, purportedly following *Elizondo v. Medina*, 100 Ill. App. 3d 718, 721 (1981), finds that the overstatement of the amount due does not invalidate the notice. The majority, like the court in *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263, 272 (1998), misstates the holding of *Elizondo*. The plaintiff in *Elizondo* sent a five-day notice demanding $900 when the defendant owed $800 in rent. The defendant tendered $400. The *Elizondo* court held, "defendant's argument that the 5-day notice was invalid because it demanded more money than plaintiff was entitled to receive is without merit since defendant, having tendered only $400, cannot claim prejudice." *Elizondo*, 100 Ill. App. 3d at 721. Thus, the *Elizondo* court did not find the notice valid. It specifically held that the defendant could not complain of the invalidity of the notice because the defendant could not show prejudice.

¶ 63    Subsequent decisions require the party seeking eviction to show strict compliance with the statute. *Figueroa*, 404 Ill. App. 3d at 52; *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 296 (1993); *Nance v. Bell*, 210 Ill. App. 3d 97, 99 (1991). Because the *Elizondo* court dismissed the appeal for failure to show prejudice, the *Elizondo* decision conflicts irreconcilably with the decisions requiring strict compliance with the statute. "[P]lacing the burden on respondent to show that it was *** prejudiced would mean that petitioner could obtain [relief] without strictly complying with the statutory notice requirements." *In re Application of Cook County Collector for Judgment and Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1975*, 100 Ill. App. 3d 178, 179 (1981); see also *People v. Espinoza*, 2015 IL 118218, ¶ 27 ("the charging instruments were required to strictly comply with [a statute]. *** [T]he defendants were not required to show that they were prejudiced by the defects in the charging instruments"). I would not follow *Elizondo*, as it misstates the law. Instead, I would require strict compliance with the statute. The notice must demand

the past due rent, specifying the amount necessary for the landlord to "waive the *** right to terminate the lease under this notice." 735 ILCS 5/9-209 (West 2018). Applying the persuasive reasoning of *Fitzpatrick* and *Levitz Furniture*, I would find that the overstatement of the rent due rendered the notice ineffective. The trial court should have dismissed the case once it found that Wilson overstated the amount due because Wilson in essence, made a claim for rent that was already paid.

¶ 64     Even if Wilson had sent a notice that complied with the statute by stating the correct amount due, I would find that Wilson had not shown grounds for evicting Grant. The majority implicitly acknowledges the ambiguity of the lease. In one sentence, the lease apparently puts on Grant the financial burden of all repairs, and in the very next sentence the lease limits her liability to the repairs made when "repairs are required due to Lessee's conduct or neglect." Majority is aware that we interpret the contract without deference to the trial court's interpretation, and we construe ambiguities against the lessor. *Harris Trust & Savings Bank v. LaSalle National Bank*, 208 Ill. App. 3d 447, 453 (1990); *Chicago Housing Authority v. Rose*, 203 Ill. App. 3d 208, 216 (1990). However, the majority has failed to follow these basic principles.

¶ 65     The majority's implicit construction of the contract allows Grant to deduct from her rent the cost of repairs she made: (i) if she did not cause the damage by her conduct or neglect, (ii) if she first notified Wilson of the need for repairs, and (iii) allowed Wilson an opportunity to make the repairs. The contract incorporates the Residential Tenants' Right to Repair Act (Repair Act). 765 ILCS 742/1 (West 2018). Under the Repair Act, a tenant may deduct certain repair costs from rent payments only if the tenant first "notif[ies] the landlord in writing *** of the tenant's intention to have the repair made at the landlord's expense." 765 ILCS 742/5 (West 2018). The landlord must either allow the deduction or make the repair within 14 days "or more promptly as conditions require in the case of an emergency." 765 ILCS 742/5 (West 2018). The incorporation of the Repair Act into the lease comports

with general principles of contract interpretation. "the law existing at the time a contract is made becomes a part of it." *Chmelik v. Vana*, 31 Ill. 2d 272, 281 (1964).

¶ 66    Thus, Grant could deduct the cost of repairs from the rent payment if she first gave Wilson written notice and an opportunity to make the repairs. She could also deduct the cost from the rent payment if she provided oral notice of the need for repair, if Wilson had waived its right to written notice by adopting a practice of accepting oral notice (perhaps to Lott) as sufficient to invoke a right to repairs. See *Pocius v. Halvorsen*, 30 Ill. 2d 73, 81-82 (1963) ("where the terms of an agreement are in any respect doubtful or uncertain and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts"); *Zion Industries, Inc. v. Loy*, 46 Ill. App. 3d 902, 906 (1977) ("the acknowledgment of the oral request implied by sending men and materials to the building and attempting to repair the roof, *** waiv[ed] the technicality of written notice").

¶ 67    Grant did not show that she made a written request for repairs, and she did not show that Wilson waived its right to a written request. Grant did not show that she had a right to deduct the cost of the repairs she made from the July and August 2017 rent payments. However, Wilson received checks for the rent for every month, and only three of the checks paid an amount less than the full monthly rent set by the lease. Grant could, in some circumstances, withhold from the rent the cost of repairs she made, but she failed to show that she met all the conditions for such withholding. Because of these shortcomings, the majority affirms the trial court's eviction of her from her home.

> "[F]orfeitures are not favored by courts of equity. *** This is especially true where the agreement is simply one for the payment of money. A forfeiture of land caused by the nonperformance of the agreement will be set aside on behalf of the defaulting party or other

relief granted on the payment of the debt with interest and costs, unless the purchaser has barred himself by his own conduct." *Miles Homes, Inc. v. Mintjal*, 17 Ill. App. 3d 642, 647-48 (1974).

¶ 68    I would adopt the reasoning of *Ripley v. Kaemmerer*, 279 Ill. App. 336, 345–46 (1935). The court there found, "[the tenants] made a tender of what they deemed to be due and in good faith undertook to comply with the terms of the lease as they construed it. While they were wrong in their construction, it would be inequitable to declare a forfeiture of the lease for failure to make the payment of the full amount." *Ripley*, 279 Ill. App. at 345-46.

¶ 69    A federal court similarly reasoned:

"In sum, this is a case where eviction would work a forfeiture; the landlord acted in bad faith, the tenant acted in good faith; the tenant has been willing and able to pay any money owed under the lease; and the tenant raised these matters prior to trial of the landlord's action for repossession. In our view, Massachusetts would not permit repossession under these circumstances." *In re 29 Newbury St., Inc.*, 856 F. 2d 424, 427–28 (1st Cir. 1988).

¶ 70    Grant's failure to realize the need to contact Wilson before making repairs does not show bad faith on her part, as the ambiguous contract says nothing about a need to contact Wilson, and the majority is recognizing such need based on a statute not mentioned in the lease. The majority holds Grant to an unrealistic standard of legal knowledge in its effort to take away her home, while ignoring the evidence of Wilson's notice that included an amount greater than what was due and owing. Wilson failed to inform Grant of the correct amount due after Grant had shown a willingness and ability to pay her just debts, and this court should not use her misinterpretation of the ambiguous contract and her failure to guess the correct amount due as grounds for evicting her from her home. Accordingly, I respectfully dissent.